**NOGUEIRA v. NEW YORK, N. H. & H. R. CO.**

Circuit Court of Appeals, Second Circuit.
April 15, 1929.

No. 245.

Sansone & Gelb, of New York City (Sol Gelb, of New York City, of counsel), for appellant.

John M. Gibbons, of New York City (E. R. Brumley and E. J. Moore, both of New York City, and J. Howland Gardner, of New Haven, Conn., of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge. The plaintiff was employed by the defendant to work as a freight handler upon its docks and car floats. On October 13, 1927, at the time of sustaining the injuries complained of, he was working as one of a gang of freight handlers in loading heavy bales of paper, destined for transportation in interstate commerce, onto a 500-ton car float moored at Pier 42, East River. His work consisted in placing a bale of paper upon a hand truck and drawing it some 15 feet along the dock, and thence down an inclined plank which led from the dock to the car float. In going down the plank, he was expected to have the assistance of several other members of the gang. He went in front of the truck, holding its handles, while others at the rear were supposed to fasten

hand hooks into the bale and help retard its progress. Due to their negligence, as he contends, the truck got out of control and skidded down the inclined plank, throwing him to the floor of the car float and falling on top of him in such a way as to crush his leg.

We may assume, as have the parties, that prior to the enactment of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950) a finding by the jury of negligence would have established in favor of the plaintiff a cause of action under the Employers' Liability Act (45 USCA §§ 51–59). See Erie R. R. Co. v. Jacobus, 221 F. 335 (C. C. A. 3); The Passaic, 204 F. 266 (C. C. A. 2); The Erie Lighter 108, 250 F. 490 (D. C. N. J.); Southern Pacific Co. v. Jensen, 244 U. S. 205, 213, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. The dispute is whether compensation under the later statute has not now been made the sole relief which plaintiff may obtain.

This act provides a compulsory system of compensation for disability or death resulting from injury (irrespective of the employer's fault) to employees in certain maritime employments. The statute is long, and it will suffice to refer to certain of its provisions, which appear pertinent to the present inquiry. Section 3 provides that compensation shall be payable in respect to disability or death of an employee, but only if the injury occurs on navigable waters of the United States, and if recovery may not validly be provided by state compensation laws. It also excepts from the act certain employees, including "a master or member of a crew of any vessel," and "any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." Employees of the above description are also expressly excluded from the definition of "employee" given in section 2(3). Section 4 declares that "every employer shall be liable for and shall secure [by insurance] the payment to his employees of the compensation payable under" later sections. Turning back to the definitional provisions (section 2), we find that "the term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)." Section 5 relates to the exclusiveness of the compensation liability imposed by the act. It reads as follows:

"Sec. 5. The liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this act, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this act, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

These express provisions make it clear that, if the plaintiff had a right to compensation under the act, this right was exclusive of all others.

If the plaintiff's employment was maritime, it can scarcely be doubted that the conditions specified in section 3 are met. He was loading a vessel of more than 18 tons register, and was not the master nor a member of the crew. His injury occurred upon navigable waters. It was one for which recovery could not validly be provided by a state compensation law, if his employment was maritime. Northern Coal & Dock Co. v. Strand, 278 U. S. 142, 49 S. Ct. 88, 73 L. Ed. ——. There the coal company maintained a dock on Superior Bay, Wisconsin. It employed regularly some 18 men, who worked, as directed, upon the dock or upon vessels made fast thereto for unloading. Strand was one of those so employed. He was killed while on a vessel, assisting in the discharge of her cargo. A judgment by the state Supreme Court, sustaining an award to his widow under the state Compensation Act, was reversed. In the opinion of Mr. Justice McReynolds it is said:

"Strand's employment contemplated that he should labor both upon the land and the water. When killed he was doing longshore or stevedore work on a vessel lying in navigable waters, according to his undertaking. His employment, so far as it pertained to such work, was maritime; the tort was maritime, and the rights of the parties must be ascertained upon a consideration of the maritime law. Southern Pacific Co. v. Jensen, 244 U. S. 205, 217 [37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900]; Washington v. Dawson & Co., 264 U. S. 219 [44 S. Ct. 302, 68 L. Ed. 646].

\* \* \* The unloading of a ship is not matter of purely local concern. It has direct relation to commerce and navigation, and uniform rules in respect thereto are essential. The fact that Strand worked for the major portion of the time upon land is unimportant. He was upon the water in pursuit of his maritime duties when the accident occurred."

■ There is, of course, no distinction, in respect to the matter now under consideration, between unloading and loading a vessel. Newham v. Chile Exploration Co., 232 N. Y. 37, 133 N. E. 120, 25 A. L. R. 1018; Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 61, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157. These cases also tend strongly to prove that the plaintiff, Nogueira, was engaged in maritime employment at the time of his injury. We have only to decide whether the fact that he was loading goods into cars on a car float makes his employment nonmaritime, whereas it would clearly have been maritime, had he been loading a barge or a lighter. The cars were to be carried on the water after they were loaded. That later they will be pulled off and run on land would seem to furnish no more reason for a distinction than would the fact that goods loaded on a barge were later to be transshipped by rail. The statute expressly recognizes that the employment may be maritime only in part. We conclude that the employment was maritime, and that the defendant was liable for the payment of compensation as prescribed in section 4.

■ There remains to be considered the plaintiff's argument that the act was never intended to include railroad employees engaged in interstate commerce, because they already had a remedy under the Employers' Liability Act. The bill which resulted in the Longshoremen's and Harbor Workers' Compensation Act was reported by the Senate Judiciary Committee (Senate Report 973, 67 Cong. Rec. 10467), with a statement that its purpose was to provide for compensation, in the stead of liability, for a class of employees commonly known as longshoremen. For their protection congressional legislation was thought necessary, because of prior decisions by the Supreme Court. In Southern Pacific Co. v. Jensen, supra, it had been held that a stevedore employed by the Southern Pacific Company to unload one of its vessels, and injured thereon, was not entitled to compensation under the New York Workmen's Compensation Act (Consol. Laws, c. 67), because the state lacked power to legislate with respect to matters within the maritime jurisdiction of the United States. Congressional attempts (40 Stat. 395; 42 Stat. 634, 28 USCA §§ 41(3), 371(3) by amendment of the Judicial Code to allow persons in maritime employment to claim rights and remedies under state compensation acts were held unconstitutional in Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145, and Washington v. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646. These and numerous related decisions have been carefully reviewed by the Supreme Court in its very recent decision of London Guarantee & Accident Co. v. Industrial Accident Commission, 279 U. S. ——, 49 S. Ct. 296, 73 L. Ed. ——, decided April 8, 1929.

In the meantime seamen had been given by the Jones Act (41 Stat. 1007 [46 USCA § 688]) the remedies accorded to railway employees under the Employers' Liability Act. Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Engel v. Davenport, 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813. As a result the seamen were satisfied with their condition, and through their organized representative made known to Congress that they wished to remain outside the Longshoremen's and Harbor Workers' Compensation Act (68 Cong. Rec. 5908), and the bill as finally enacted excluded them. By the decision of International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, stevedores had been held to be seamen within the meaning of the Jones Act. Consequently they also had the rights and remedies of railway employees engaged in interstate commerce. They, however, were not excepted from the Longshoremen's and Harbor Workers' Compensation Act. On the contrary by reason of section 5, their only right in respect to disability or death from injury occurring upon navigable waters is now the right to compensation conferred by the Act. Chernick v. Clyde S. S. Co., 248 N. Y. 508, 162 N. E. 504; Obrecht-Lynch Corp. v. Clark, 30 F.(2d) 144, 146 (D. C. Md.) semble.

In the light of this legislative history it would seem impossible to construe the statute (assuming that its language is not so clear as to forbid construction) so as to exclude freight handlers who work on railway car floats, without also excluding longshoremen who work on other types of vessels. Both classes are within the letter of the statute; both had other rights and remedies before its passage. It may be noted that, in extending this statute to the District of Columbia, Congress expressly excepted railroad employees

182

from its operation. 45 Stat. 600, 33 USCA § 901, note.

The plaintiff argues that this construction will bring about confusion and inconsistencies; that a brakeman or engineer, if injured on the float, will have one remedy, and, if injured on the dock, another. But, as pointed out in Resigno v. F. Jarka Co., 248 N. Y. 225, 234, 162 N. E. 13, under the Haverty Case and State Industrial Comm. v. Nordenholt Corp., 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013, it was already common knowledge that the remedies available to a stevedore might vary from day to day, or even from hour to hour, and that a similar situation exists in the case of a railway employee, who gains or loses a remedy according to the particular service he is rendering at the very moment of his injury. Moreover, it does not follow that the mere locus of the accident necessarily determines the right. A brakeman coupling cars upon a float, or an engineer driving his engine on a float bridge, may not be in maritime service just because he is over the water at the moment. See Cope v. Vallette Dry Dock Co., 16 F. 924, 925 (C. C. La.), affirmed, 119 U. S. 652, 7 S. Ct. 336, 30 L. Ed. 501. We do not say that he is not; we merely pass that problem until it shall arise.

Furthermore, adoption of the plaintiff's interpretation would drive us to the absurd result that a railroad employee loading intrastate freight upon a car float would also be excluded, and thus left without any statutory remedy. We conclude that railway employees employed in maritime employment cannot be excepted from the act.

The judgment is affirmed.